Alan E. Wisotsky (SBN 68051)
Jeffrey Held (SBN 106991)
LAW OFFICES OF ALAN E. WISOTSKY
300 Esplanade Drive, Suite 1500
Oxnard, California  93036
Tel:    (805) 278-0920
Fax:    (805) 278-0289
E-mail:  lawyers@wisotskylaw.com

Peter G. Bertling # 131602 (pgb@bertling-clausen.com)
Steve H. Shlens #188851 (shs@bertling-clausen.com)
BERTLING & CLAUSEN L.L.P.
15 West Carrillo Street, Suite 100
Santa Barbara, California 93101
Tel:  (805) 892-2100
Fax:  (805) 963-6044

Attorneys for Defendants COUNTY OF VENTURA,
VENTURA COUNTY SHERIFF'S DEPARTMENT,
SHERIFF BOB BROOKS, CALIFORNIA FORENSIC
MEDICAL GROUP [*incorrectly sued and served herein
as California Forensic Group*], and JOHN KORZELIUS

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN W. BIRGES, an individual,<br><br>Plaintiff,<br><br>v.<br><br>COUNTY OF VENTURA, VENTURA COUNTY SHERIFF'S DEPARTMENT, VENTURA COUNTY SHERIFF BOB BROOKS, an individual, CALIFORNIA FORENSIC GROUP, JOHN KORZELIUS, and DOES 1-100,<br><br>Defendants. | No. CV 09-01249 SJO (SSx)<br><br>**DEFENDANTS' AMENDED NOTICE OF HEARING OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, FOR ORDER DECIDING CERTAIN ISSUES; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>[Statement of uncontroverted facts/ separate statement of undisputed facts and conclusions of law and declaration of defense counsel with excerpts of plaintiff's deposition appended thereto filed concurrently herewith, along with proposed judgment]<br><br>Date:  March 29, 2010<br>Time:  10:00 a.m.<br>Ctrm: 1 – 2nd Floor, 312 N. Spring Street |

1   TO PLAINTIFF, JOHN W. BIRGES, AND TO HIS COUNSEL OF RECORD, LAW

2   OFFICES OF BRIAN A. VOGEL BY BRIAN A. VOGEL:

3        PLEASE TAKE NOTICE that on March 29, 2010, at 10:00 a.m. in Courtroom

4   1 – 2nd Floor of the United States District Court, located at 312 North Spring Street,

5   Los Angeles, California, defendants COUNTY OF VENTURA, VENTURA

6   COUNTY SHERIFF'S DEPARTMENT, SHERIFF BOB BROOKS, CALIFORNIA

7   FORENSIC MEDICAL GROUP, and JOHN KORZELIUS will move the Honorable

8   S. James Otero, United States District Judge, for entry of summary judgment in their

9   favor with prejudice and a dismissal of the action against them as to all ten causes of

10   action comprising the second amended complaint.

11        In the alternative, defendants request the Court to enter an order deciding issues

12   in advance of trial (sometimes known as a summary adjudication of issues being

13   without substantial controversy or as a partial summary judgment).  These issues are:

14   (1) that the custodial defendants, Sheriff Bob Brooks and the Ventura County

15   Sheriff's Department, were not subjectively deliberately indifferent and therefore not

16   liable to the plaintiff under the first through third causes of action; (2) that California

17   Forensic Medical Group and Dr. Korzelius were not subjectively deliberately

18   indifferent and therefore not liable to the plaintiff under the first through third causes

19   of action; (3) that the Sheriff, Bob Brooks, and his department are absolutely immune

20   under the Eleventh Amendment as to the first through third causes of action; (4) that

21   the County of Ventura is not subject to suit as to the first through third causes of

22   action, as it cannot make policy for a state agency, the Sheriff's Department; (5) that

23   each defendant is not liable under any cause of action of the ten contained in the

24   second amended complaint because of the absence of proximate causation; (6) that

25   there is no evidence of fault as to any defendant, each of whom ought to be dismissed

26   from the seven state-law causes of action, four through ten; (7) the seven state-law

27   causes of action, four through ten, are not viable versus the Sheriff, Bob Brooks, his

28   department, and the County of Ventura, as a result of Government Code Section

ii

844.6(a)(2).  Should the Court deny summary judgment, defendants request that the Court specify that some or all of these seven issues have been finally determined and not subject to further proceedings in this or any other federal or state action.

This motion is based upon this notice of hearing of motion; the appended memorandum of points and authorities; the concurrently filed and served statement of uncontroverted facts/separate statement of undisputed facts and conclusions of law; and the concurrently filed declaration of defense counsel with appended excerpts of plaintiff's deposition.  A proposed judgment is lodged concurrently herewith, in accordance with Central District Local Rule 56-1.

This motion is made following the conference of counsel pursuant to Central District Local Rule 7-3 and Judge Otero's standing order, point 18(a), which occurred on February 3, 2010.  The declaration of defense counsel Jeffrey Held is filed concurrently herewith in full satisfaction of the prefiling conference of counsel requirement of the standing order, point 18(a).


Dated:  February _____, 2010          LAW OFFICES OF ALAN E. WISOTSKY


                                      By:_____
                                          JEFFREY HELD


Dated:  February _____, 2010          BERTLING & CLAUSEN


                                      By:_____
                                          STEVE H. SHLENS
                                          Attorneys for Defendants
                                          COUNTY OF VENTURA, VENTURA
                                          COUNTY SHERIFF'S DEPARTMENT,
                                          SHERIFF BOB BROOKS,
                                          CALIFORNIA FORENSIC MEDICAL
                                          GROUP, and JOHN KORZELIUS, M.D.

# **TABLE OF CONTENTS**

**PAGE**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . v

MEMORANDUM OF POINTS AND AUTHORITIES . . . . . . . . . . . . . . . . . . . . 1

I.     ENABLING AUTHORITY  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.    INTRODUCTION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

III.   SUBJECTIVE DELIBERATE INDIFFERENCE IS
       THE CULPABILITY STANDARD FOR JAILS AND
       JAILERS IN §1983 CASES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

IV.    ALLEGATIONS THAT JAIL MEDICAL PROVIDERS
       ARE LIABLE UNDER §1983 ARE LIKEWISE
       EVALUATED UNDER THE SUBJECTIVE
       DELIBERATE INDIFFERENCE CULPABILITY
       STANDARD . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

V.     THE ENTITY DEFENDANTS CANNOT BE LIABLE
       BOTH BECAUSE THERE WAS NO SUBJECTIVE
       DELIBERATE INDIFFERENCE AND BECAUSE
       NO INDIVIDUAL DEFENDANT IS OR COULD BE
       LIABLE UNDER THESE FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . 12

VI.    THERE IS NO PROXIMATE CAUSATION BETWEEN
       ANY OF THE DEFENDANTS' CONDUCT AND
       PLAINTIFF'S HARM  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

VII.   UNDER *McMILLIAN-VENEGAS*, A SHERIFF IS A
       STATE OFFICIAL, AND HIS OR HER AGENCY IS A
       STATE AGENCY SUBJECT TO THE ABSOLUTE
       ELEVENTH AMENDMENT DAMAGES IMMUNITY  . . . . . . . . 15

VIII.  THE STATE-LAW THEORIES FAIL FOR THREE REASONS . . 18

       A.     There Is No Evidence of Fault upon Which a State-Law
              Cause of Action Must Rest . . . . . . . . . . . . . . . . . . . . . . . . . 18

       B.     Municipalities Are Immune from State-Law Causes
              of Action Arising from Injuries to Jail Inmates . . . . . . . . . . 18

       C.     There Is No Proximate Cause . . . . . . . . . . . . . . . . . . . . . . 19

IX.    THE COURT HAS JURISDICTION TO RULE ON THE
       STATE-LAW CAUSES OF ACTION IN THIS
       PROCEEDING BECAUSE THEY ARISE FROM THE
       SAME COMMON NUCLEUS OF OPERATIVE FACTS  . . . . . . 19

X.     CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

iv

# TABLE OF AUTHORITIES

PAGE

## FEDERAL CASES

*Beal Bank v. Pittorino*
177 F.3d 65 (1st Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Caiozzo v. Koreman*
581 F.3d 63 (2d Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Cameron v. City of Pontiac*
813 F.2d 782 (6th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*City of Los Angeles v. Heller*
475 U.S. 796 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Farmer v. Brennan*
511 U.S. 825 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7-9

*Frost v. Agnos*
152 F.3d 1124 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Gini v. Las Vegas Metropolitan Police Department*
40 F.3d 1041 (9th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Green v. City of Tucson*
340 F.3d 891 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Johnson v. California*
543 U.S. 499 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Johnson v. Fankell*
520 U.S. 911 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Jones v. Bates*
127 F.3d 839 (9th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*McMillian v. Monroe County, Alabama*
520 U.S. 781 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 17

*Minority Police Officers v. City of South Bend*
721 F.2d 197 (7th Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Quintanilla v. City of Downey*
84 F.3d 353 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Redman v. County of San Diego*
942 F.2d 1435 (9th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Republic of the Philippines v. Marcos*
862 F.2d 1355 (9th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Salahuddin v. Goord*
    467 F.3d 263 (2d Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Scott v. Henrich*
    39 F.3d 912 (9th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Somers v. Thurman*
    109 F.3d 614 (9th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Spain v. Procunier*
    600 F.2d 189 (9th Cir. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Steel Co. v. Citizens*
    523 U.S. 83 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Streit v. County of Los Angeles*
    236 F.3d 552 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16

*Toguchi v. Chung*
    391 F.3d 1051 (9th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Will v. Michigan Department of State Police*
    491 U.S. 58 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15


**<u>STATE CASES</u>**

*Andrews v. Wells*
    204 Cal.App.3d 533 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Badiggo v. County of Ventura*
    207 Cal.App.3d 357 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*City of Simi Valley v. Superior Court*
    111 Cal.App.4th 1077 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Cottle v. Superior Court*
    3 Cal.App.4th 1367 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*County of Los Angeles v. Superior Court (Peters),*
    68 Cal.App.4th 1166 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15-17

*Thompson v. County of Los Angeles*
    142 Cal.App.4th 154 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Venegas v. County of Los Angeles*
    32 Cal.4th 820 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17

1

## **FEDERAL RULES**

2  Federal Rules of Civil Procedure, Rule 54 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

3  Federal Rules of Civil Procedure, Rule 56 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

4

5

6

## **STATE STATUTES**

7  Government Code Section 12560 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

8  Government Code Section 25303 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

9  Government Code Section 844.6 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.

### ENABLING AUTHORITY

An order deciding one or more issues in advance of trial is permissible.  This procedure is sometimes referred to as either a summary adjudication that certain issues are without substantial controversy or as a partial summary judgment.  Fed. R. Civ. P. 54(b) and 56(d)(1); *Minority Police Officers v. City of South Bend*, 721 F.2d 197, 200 (7th Cir. 1983); *Beal Bank v. Pittorino*, 177 F.3d 65, 68 (1st Cir. 1999).

### II.

### INTRODUCTION

Plaintiff was an inmate at the Todd Road Jail facility operated by the Ventura County Sheriff's Department and staffed, for medical purposes, by an independent medical contract services provider retained by the Ventura County Sheriff's Department, California Forensic Medical Group.  He had been incarcerated for three weeks in the Todd Road Jail.  On February 24, 2008, plaintiff made an intemperate remark to an inmate named Jose Mejia denigrating his chess-playing ability when he saw another inmate checkmate inmate Mejia.  Plaintiff began laughing and said either, "You let this guy beat you?" or "You let this dumb ass beat you?"

Plaintiff immediately realized that telling someone that he was inferior in a mental matchup was not wise.  He also immediately realized that it had been injudicious of him to poke fun at an Hispanic inmate who would likely be inculturated to react to any denigrating insults to male prowess.  He also soon understood that his misguided effort to establish bonding camaraderie with the losing inmate was problematic because he had inadvertently insulted a member of a significant jail inmate power block.

Plaintiff quickly apologized for showing what could be considered disrespect for inmate Mejia.  He told him that he had not intended to show him disrespect.

/ / /

1

1    Inmate Mejia was not placated by the apology. He fixed plaintiff's gaze and

2 glared at him. He was obviously taking it much more seriously than plaintiff had ever

3 intended. Plaintiff soon realized that inmate Mejia was quite angry and primed to

4 react adversely.

5    This was novel behavior on the part of inmate Mejia. Plaintiff had been housed

6 with these same inmates for three weeks and spent four hours per day with them in

7 the communal dayroom. During that time, there were no problems or altercations

8 with any of the inmates at the Todd Road Jail. Plaintiff had been housed with the

9 three inmates who attacked him for those same three weeks and four hours per day

10 of communal dayroom time before they attacked him, again fully without incident,

11 altercation, or threat.

12    Inmate Mejia approached plaintiff a few minutes after the laughing comment

13 about being checkmated by an inmate generally regarded to be the worst chess player

14 in the cell block. Inmate Mejia told plaintiff that he would expect disrespect

15 reparations, stating that "You need to start kicking me down canteen every week."

16 Plaintiff did not react well to the implicit threat of retribution if he did not share his

17 commissary with inmate Mejia in satisfaction of the disrespect reparations request.

18 Plaintiff told inmate Mejia words to the effect of "Fuck off — go to hell." Inmate

19 Mejia approached plaintiff again a few minutes later, giving him a second chance to

20 rethink his profane rejection of the disrespect reparations commissary demand.

21 Plaintiff again rejected the demand.

22    Within seconds, plaintiff felt himself being rushed from behind by other

23 inmates, the recipient of a flurry of blows from fists. He thought that the primary

24 attack came from behind and believes that inmate Mejia instigated the attack upon

25 him but probably did not directly participate in the delivery of blows.

26    Plaintiff received multiple blows from the inmates. One connected hard with

27 his jaw when he dropped his guard in a vain effort to strike back. The entire attack

28 was fairly brief, lasting perhaps 10 to 15 seconds.

No guard or jail official attacked plaintiff.  Plaintiff never notified any custody deputy or jail official of any fear or concern at any time before the three inmates attacked him (plaintiff's deposition, Exhibit A, p. 157:3-6).

Custody staff took prompt action.  As soon as plaintiff's jaw was struck, a custody deputy came on the public address system in the cell block and ordered lockdown.  No blows were thrown at plaintiff after that.

No deputy or jail official was aware of the events preceding the attack upon plaintiff, such as the chess game comment or inmate Mejia's two demands that plaintiff give him part of his commissary in reparation for the disrespectful laughter and comment.  Plaintiff has stated that the attack upon him was sudden and unexpected (p. 157:7-9).

In addition to faulting the jail for not preventing the attack (second amended complaint, p. 7:1-3), plaintiff likewise faults the medical staff at the jail for not taking good medical care of him after his beating (second amended complaint, p. 4:22-24). The facts in this regard indicate that plaintiff did receive substantial and significant medical care in the wake of the attack upon him.

On the day of the attack, a jail nurse examined plaintiff.  In fact, she examined him immediately after the attack.  She palpated plaintiff's jaw and said, "I don't think it's broken.  I think it's just swollen."

The nurse involved a doctor who ordered a series of jaw X-rays.  These were taken the very first thing on the morning after the attack.

Two days after the attack, the X-ray results were obtained and revealed that plaintiff had, in fact, suffered a fractured jaw.  He was told the same day that his jaw was fractured.  That was when he first learned that his jaw was broken.  It was at that time that plaintiff first requested more advanced medical care for his broken jaw.

On February 28, 2008, two days after the X-rays became available and plaintiff requested more advanced medical care, plaintiff was transported to see a Dr. Lopez. Dr. Lopez is an oral maxillofacial surgeon under contract with the Ventura County

1   Jail to provide services to inmates.  Dr. Lopez repaired plaintiff's broken jaw by
2   installing a series of mandibular guide wires.

3      Plaintiff was given continuous post-surgical analgesics once the anesthesia
4   wore off.  A few days after Dr. Lopez installed the guide wires in plaintiff's jaw, the
5   wires loosened, especially on the left side, cutting plaintiff's mouth and gums.  A
6   nurse packed his mouth with gauze to keep the loose wires from making contact with
7   the inside of his cheeks.  Dr. Lopez repaired the problem of the failed guide wires in
8   plaintiff's jaw a few days after they became loosened by using rubber bands.

9      Plaintiff was asked in his deposition, page 169, lines 23-25, "Was there
10  anything in your opinion which the guards or the custody deputies could have done
11  to have preempted the attack of the inmates upon you?"  On page 170 at line 1 he
12  answered, "No."

13     Plaintiff was asked at pages 179 and 180 of his deposition whether the absence
14  of surgical care for his jaw between the time of the attack and the oral maxillofacial
15  surgery four days later worsened his condition beyond the damage done in the attack
16  by the inmates.  He stated, "I don't think so" (p. 179:14-25, p. 180:1).

17     The second amended complaint is configured in ten causes of action.  The first
18  three are brought under the federal civil rights statute, 42 U.S.C. §1983.  The other
19  seven causes of action, 4 through 10, are brought under various state-law theories of
20  recovery.  All of the causes of action, however, derive from the same common
21  nucleus of operative facts as described above and as sourced in the concurrently filed
22  statement of uncontroverted facts/separate statement of undisputed facts.

23     Defendants contend that summary judgment is appropriate based upon a
24  number of legal doctrines.  These are set out below.

25     There is no federal liability for the inmate-on-inmate attack because there was
26  no subjective deliberate indifference. Extensive appellate precedent now clarifies that
27  for purposes of §1983 analysis, there are, broadly speaking, two forms of official
28  conduct.  One involves direct contact by the public officials, such as excessive force

4

1   allegations.  The second category involves situations in which the officials did not

2   make any contact with plaintiff but, rather, are sought to be made liable for the

3   actions of others or for not doing enough.  The case law now clarifies that in the

4   second category of situations, which would certainly encompass an inmate-on-inmate

5   attack, there is a high conduct fault standard characterized as subjective deliberate

6   indifference.  This culpability standard means willful blindness to impending serious

7   harm which is easily preventable.  Considering that plaintiff testified that there was

8   nothing that the deputies could have done to have preempted the attack of the inmates

9   upon him (p. 169:23-24, p. 170: 1), there is not even negligence, much less subjective

10  deliberate indifference.

11      The Ninth Circuit has held that jail medical personnel are judged by the

12  conduct fault standard of subjective deliberate indifference as well.  In view of the

13  facts that plaintiff was seen by the nurse immediately, X-rays were obtained the very

14  next morning, and oral maxillofacial surgery was performed two days after X-ray

15  results became available, involving installation of mandibular guide wires, it cannot

16  be said that there was anything even remotely approaching insouciance on the part

17  of the jail medical provider.

18      The third basis for this motion is the absence of proximate causation.  Plaintiff

19  has testified that there was nothing that the deputies could have done to have averted

20  the attack upon him, which was sudden and was caused by his own ill-timed remark

21  to inmate Mejia.  Plaintiff has also testified that the time between the attack and the

22  installation of mandibular guide wires by the oral maxillofacial surgeon, Lopez, did

23  not worsen his condition beyond that injury sustained in the attack by the inmates

24  (p. 179:14-25, p. 180:1-3).  Plaintiff has also testified that when the left-side wires

25  became loose, they were replaced with rubber band fasteners a few days later.

26      A separate basis for this motion on behalf of the Sheriff and his department is

27  that under United States and California Supreme Court decisions, the Sheriff is a state

28  official who enjoys the protection of the absolute damages immunity of the Eleventh

Amendment.  The Sheriff's Department is similarly considered a state agency subject to the Eleventh Amendment immunity.

The County of Ventura is not liable because it cannot control the operation of a state official, the Sheriff, or a state agency, the Sheriff's Department.  The County cannot have been a policymaker for an agency and official which were arms of state government and over which the County had no operational control.

Turning to the state-law causes of action, there is no evidence of fault in this case.  No matter how the theories are denominated, or into which causes of action they are sought to be forced, there is simply no evidence of fault and no triable issue of misconduct as to any of the defendants.

State law likewise makes proximate causation an indispensable element of every cause of action.  Its absence dooms the seven state-law theories, as well as the federal counts.

Finally, under a California Government Code section, public entities cannot be liable for injuries to jail inmates.  Therefore, the state-law causes of action fail against the County of Ventura, the Ventura County Sheriff's Department, and Ventura County Sheriff Bob Brooks based upon that immunity.

## III.

## SUBJECTIVE DELIBERATE INDIFFERENCE IS THE CULPABILITY STANDARD FOR JAILS AND JAILERS IN §1983 CASES

Pretrial detainees' rights under the Fourteenth Amendment are comparable to prisoners' rights under the Eighth Amendment, and the Ninth Circuit applies the same standards for analysis.  *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998).  The fact that deliberate indifference is the culpability standard used to measure violations of the Eighth Amendment's prohibition of cruel and unusual punishment does not mean that it applies only to persons who may be punished.  *Redman v. County of San Diego*, 942 F.2d 1435, 1442 (9th Cir. 1991).  Therefore, a prisoner's status as a

pretrial detainee who may not be punished does not preclude application of the standard. It is not inappropriate that the same standard is used under both the Fourteenth and Eighth amendments. 942 F.2d at 1442. The landmark United States Supreme Court decision addressing the issue of whether the jail culpability standard under §1983 is subjective deliberate indifference or objective deliberate indifference is *Farmer v. Brennan*, 511 U.S. 825 (1994). Subjective deliberate indifference, as used in the criminal law, is the test for whether prison authorities have acted with deliberate indifference toward prisoners. The test is not an objective one but, rather, a subjective standard. *Farmer* mandates inquiry into a jail official's mental state. 511 U.S. at 838. When addressing "levels of blameworthiness," it is "no accident" that §1983 "suits against prison officials must satisfy a subjective requirement." *Id*. The *Farmer* Court wrote:

> To be sure, the reasons for focusing on what a defen-
> dant's mental attitude actually was (or is), rather than what
> it should have been (or should be), differ in the Eighth
> Amendment context from that of the criminal law. Here, a
> subjective approach isolates those who inflict punishment;
> there, it isolates those against whom punishment should be
> inflicted. But the result is the same: to act recklessly in either
> setting a person must consciously disregard a substantial risk
> of serious harm.

511 U.S. at 839.

The civil law generally calls a person reckless who acts or, having a duty to act, fails to act, in the face of an unjustifiably high risk of harm which is either known or so obvious that it should have been known. In contrast, the criminal law generally permits a finding of recklessness only when a person disregards a risk of harm of which he is actually aware. The *Farmer* Court explained, "The standards proposed by the parties in this case track the two approaches (though the parties do not put it

1  that way): petitioner asks us to define deliberate indifference as what we have called

2  civil-law recklessness, and respondents urge us to adopt an approach consistent with

3  recklessness in the criminal law."  511 U.S. at 837.

4       The *Farmer* Court held, "But an official's failure to alleviate a significant risk

5  that he should have perceived but did not, while no cause for commendation, cannot

6  under our cases be condemned as the infliction of punishment."  511 U.S. at 838.  The

7  *Farmer* holding is capsulized at 847, where the Court stated, "Accordingly, we reject

8  petitioner's [plaintiff's] arguments and hold that a prison official may be held liable

9  under the Eighth Amendment for denying humane conditions of confinement only if

10 he knows that inmates face a substantial risk of serious harm and disregards that risk

11 by failing to take reasonable measures to abate it."

12       This mental state requires that a jail official or officials acted or failed to act

13 while actually aware of a substantial risk that serious inmate harm would result.

14 *Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006).  As used in this context,

15 deliberate indifference is a mental state equivalent to subjective recklessness, as the

16 term is used in the criminal law.  *Id*.

17       In the facts of this case, as agreed to by plaintiff in his deposition, he

18 intemperately ridiculed another inmate for losing at a chess game to an individual

19 whom plaintiff characterized as "a dumb ass."  Plaintiff laughed at the losing inmate

20 as he said so.  This ridicule, according to plaintiff, was ill advised and directly

21 triggered the attack upon him.  The entire attack only lasted 10 or 15 seconds.  The

22 deputies stopped it very promptly, at the moment plaintiff was struck in the jaw.  The

23 deputies, plaintiff admits, had no knowledge of the brewing circumstances, the chess

24 game, the insult, the losing inmate's reparations demand, or any of the circumstances

25 of the impending attack.  It was a spontaneous random act of criminal violence.

26 Therefore, the deputies could not have been subjectively deliberately indifferent

27 because they knew of no risk so it cannot even be analyzed as to whether they should

28 have done something about a situation of which they were unaware.

8

1    Both the Supreme Court and the Ninth Circuit have sympathized with the jail's

2    "unenviable task of keeping dangerous men in safe custody under humane

3    conditions."   *Farmer v. Brennan, supra,* 511 U.S. at 845; *Spain v. Procunier*,

4    600 F.2d 189, 193 (9th Cir. 1979).  The second amended complaint argues that it was

5    wrong of the jail officials to incarcerate plaintiff with violent men who were Hispanic

6    gang members.  (Complaint, p . 6:28, p. 7:1-2.)

7    The first problem with this contention is that it is not factually accurate;

8    plaintiff has clearly testified in his deposition that for three weeks previously (84

9    hours), he mingled safely with those same inmates who attacked him.  (Plaintiff's

10   deposition, Exhibit A, p. 85:24-25; p. 86:1-3; p. 154:20-25; p. 155:1-25; p. 156:8-24.)

11   A second problem is that identified by the Supreme Court in *Farmer* and the Ninth

12   Circuit in *Spain*; jails are definitionally comprised of people who have a great deal

13   of trouble managing their anger.  The Ninth Circuit has observed that profane threats

14   and insults are a constant daily ritual in this nation's prisons.  *Somers v. Thurman*,

15   109 F.3d 614, 622 (9th Cir. 1997).

16   A third problem with the argument that race or ethnicity should be a separation

17   or segregation basis in jails has been rejected by the United States Supreme Court.

18   The high Court has held that race has no place in American life and law and that that

19   maxim is just as applicable to incarceration facilities as it is to school districts.  In

20   *Johnson v. California*, 543 U.S. 499 (2005), the Supreme Court held that a jail policy

21   of deliberately placing inmates with cellmates of the same race is facially

22   unconstitutional.  The strict scrutiny standard of review, rather than the more lenient

23   "reasonably related to a legitimate penological interest" standard, governed a

24   segregated inmate's challenge.  In order to justify government-imposed racial or

25   ethnic classification, the government would need to surmount an equal protection

26   challenge by proving that the race-based classification was narrowly tailored to

27   further a compelling governmental interest or interests.

28   / / /

# IV.

## ALLEGATIONS THAT JAIL MEDICAL PRO- VIDERS ARE LIABLE UNDER §1983 ARE LIKE- WISE EVALUATED UNDER THE SUBJECTIVE DELIBERATE INDIFFERENCE CULPABILITY STANDARD

In *Toguchi v. Chung*, 391 F.3d 1051 (9th Cir. 2004), the estate of a prisoner brought a civil rights action alleging that a jail physician was deliberately indifferent to the prisoner's serious medical needs.  Summary judgment was affirmed.  A prison official acts with deliberate indifference only if the official knows of and disregards an excessive risk to inmate health and safety.  391 F.3d at 1057.  Under this standard, the prison official must not only be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, but that person must also draw the inference.  *Id*.  If a jail official should have been aware of the risk, but was not, then the official has not violated the Constitution "no matter how severe the risk." *Id*.  This subjective approach focuses only upon what a defendant's mental attitude actually was.  *Id*.  Mere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's constitutional rights.  *Id*.

The plaintiff in *Toguchi* made many allegations of improper conduct by the jail doctor.  For instance, the claim was made that the physician had treated the prisoner for a substantial period of time and had extensive knowledge of his medical history and prior behavior.  Her decision not to conduct a differential diagnosis did create a substantial risk of serious harm, but she was not subjectively aware of that risk.  She was convinced that her diagnosis was correct.  391 F.3d at 1060.  She also did not bother to ascertain whether the plaintiffs' decedent's bizarre behavior could be the result of a drug overdose.  But she subjectively did not believe that he would have had access to contraband narcotics while in prison.  It does not matter whether her assumptions and conclusions were reasonable or not — "Rather, so long as she was

10

1    not subjectively aware of the risk that Keane could be suffering from a drug overdose,

2    and disregarded that risk, she was not deliberately indifferent." *Id.*

3       While the Eighth Amendment may not, strictly speaking, be applicable to

4    pretrial detainees, in the context of a claim for deliberate indifference to the medical

5    needs of a state pretrial detainee, the due process clause of the Fourteenth

6    Amendment requires no more than the Eighth Amendment does in the case of a

7    convicted prisoner. *Caiozzo v. Koreman*, 581 F.3d 63, 70-71 (2d Cir. 2009). That

8    court held that it is a "logical extension of the principles recognized in *Farmer* that an

9    injured state pretrial detainee, to establish a violation of his Fourteenth Amendment

10   due process rights, must prove, *inter alia*, that the government-employed defendant

11   disregarded a risk of harm to the plaintiff of which the defendant was aware." *Id*. at

12   71. The *Caiozzo* court concluded:

13           We thus reaffirm the position that we expressed in

14           *Arroyo*: Claims for deliberate indifference to a serious

15           medical condition or other serious threat to the health or

16           safety of a person in custody should be analyzed under the

17           same standard irrespective of whether they are brought

18           under the Eighth or Fourteenth Amendment. Because the

19           Supreme Court in *Farmer* articulated the proper standard

20           for analyzing such claims under the Eighth Amendment . . .

21           we adopt that standard in this case under the Due Process

22           Clause of the Fourteenth Amendment.

23   581 F.3d at 72.

24       The *Caiozzo* court held that a jail nurse was not deliberately indifferent to a

25   detainee's serious medical condition of alcohol withdrawal. The burden of proof was

26   on the estate — the plaintiff. It was required to prove that the defendants disregarded

27   a significant risk of harm to the detainee of which the defendants were actually aware.

28   / / /

1    In the present case, plaintiff was seen by the jail nurse on the same day as he

2    was attacked — he has testified immediately after the attack.  She examined him and

3    palpated his jaw.  She expressed her opinion about that.  To double-check her

4    opinion, she consulted a doctor assigned to the jail, who ordered a series of

5    mandibular X-rays.  These were carried out the very next morning.

6    The results were obtained two days later.  Plaintiff was immediately informed.

7    That was the first time that he requested medical attention to his jaw.  He was

8    scheduled for oral maxillofacial surgery with Dr. Lopez.  Two days after the

9    diagnosis, Dr. Lopez implanted mandibular guide wires.

10   Analgesics were immediately and continuously given.  A few days after the

11   surgery, the wires on the left side loosened, cutting the inside of plaintiff's mouth.

12   A nurse packed the inside of his mouth with gauze to shield it.  Within a few days,

13   the situation was repaired by installation of mandibular rubber guides.

14   There was no insouciance here.  Therefore, the defendants are not liable to the

15   plaintiff because there is no evidence of subjective deliberate indifference, a high

16   culpability standard.  California Forensic Medical Group and its physician, John

17   Korzelius, are not liable.  Neither of these, either singly or in combination, cavalierly

18   turned a blind eye to approaching serious danger.

19                                      **V.**

20   **THE ENTITY DEFENDANTS CANNOT BE LIABLE**

21   **BOTH BECAUSE THERE WAS NO SUBJECTIVE**

22   **DELIBERATE INDIFFERENCE AND BECAUSE NO**

23   **INDIVIDUAL  DEFENDANT  IS  OR  COULD  BE**

24   **LIABLE UNDER THESE FACTS**

25   Other than Dr. Korzelius, the plaintiff has chosen not to name any individual

26   defendants.  The deadline to do so elapsed on September 30, 2009 (docket entry 19).

27   A civil rights plaintiff cannot circumvent elements of a cause of action or culpability

28   standard simply by omitting inclusion of individual defendants and skipping right to

the entity defendants.  A plaintiff cannot use the sleight of hand of not including or dismissing individual public functionaries and then proceed to try to substitute a different culpability standard arguably applicable to the public entity.  *Quintanilla v. City of Downey*, 84 F.3d 353, 356 (9th Cir. 1996).  Under the United States Supreme Court decision in *City of Los Angeles v. Heller*, 475 U.S. 796 (1986), as well as under general principles of §1983 liability, a plaintiff may recover only when that individual's federal civil rights have been violated.  *Quintanilla* at 356.  Case law does not authorize the award of damages against a municipality based upon the actions of its officers or agents when they themselves inflicted no constitutional harm under the applicable standards.  *Scott v. Henrich*, 39 F.3d 912, 916 (9th Cir. 1994).

## VI.

## THERE IS NO PROXIMATE CAUSATION BETWEEN ANY OF THE DEFENDANTS' CONDUCT AND PLAINTIFF'S HARM

Proximate causation remains an indispensable element of a cause of action and in fact is a necessary prerequisite for the jurisdiction of an Article III federal court. Without a fairly traceable connection between the conduct complained of and the harm suffered, there is no causation and, therefore, there is no redressability.  *Steel Co. v. Citizens*, 523 U.S. 83, 103 (1998).  The irreducible constitutional minimum of standing contains three requirements.  The second of these is that there "must be causation — a fairly traceable connection between the plaintiff's injury and the complained-of conduct of the defendant."  523 U.S. at 103.  This triad of injury in fact, causation, and redressability constitutes the core of Article III's case or controversy requirement, and the party invoking federal jurisdiction bears the burden of establishing the triad's existence, when challenged to do so, such as by motion.

The circuits have held that tenuous or marginal connections are insufficient. If there is a fairly strong, efficient intervening cause, or no connection, then proximate causation is missing and the action must fail as against the civil rights

1   defendant.  In *Gini v. Las Vegas Metropolitan Police Department*, 40 F.3d 1041,

2   1044 (9th Cir. 1994), causation was defined in terms of reasonable foreseeability.  If

3   a defendant could not reasonably foresee that his conduct would cause the injury

4   complained of, no claim is stated.

5        In *Cameron v. City of Pontiac*, 813 F.2d 782 (6th Cir. 1987), police officers

6   were shooting at a fleeing burglary suspect.  In order to escape their gunshots, he

7   scaled a fence onto a freeway and was struck by a passing vehicle.  The court held

8   that the pretrial dismissal motion was properly granted because the alleged

9   constitutional violation was not the proximate cause of the person's death.

10       Proximate cause is an indispensable element of a state-law cause of action.

11  *Andrews v. Wells*, 204 Cal.App.3d 533, 538 (1988).  That is as true for exotic torts as

12  for garden-variety negligence.  Causation or its absence is ascertainable as a matter

13  of law, even in complex cases.  *Cottle v. Superior Court*, 3 Cal.App.4th 1367, 1384-

14  85 (1992).

15       In this case, plaintiff was specifically asked during his deposition whether there

16  was anything in his opinion which the guards or custody deputies could have done

17  to have preempted the attack of the inmates upon him.  He answered "No" (p. 169:23-

18  25; p. 170:1).  As to the four days between the attack and the oral maxillofacial

19  surgery, he was asked whether that time period caused any worsening of the jaw

20  condition beyond that already inflicted by the inmates' beating.  He said that there

21  was not (p. 179:14-25; p. 180:1-3).  Therefore, nothing that the defendants did or

22  failed to do caused the plaintiff any cognizable injury.

23  / / /

24  / / /

25  / / /

26  / / /

27  / / /

28  / / /

## VII.

## UNDER *McMILLIAN-VENEGAS*, A SHERIFF IS A STATE OFFICIAL, AND HIS OR HER AGENCY IS A STATE AGENCY SUBJECT TO THE ABSOLUTE ELEVENTH AMENDMENT DAMAGES IMMUNITY

In *McMillian v. Monroe County, Alabama*, 520 U.S. 781 (1997), the Supreme Court held that a county sheriff in Alabama was a state official when acting in his law enforcement capacity.  States and state officials sued in their official capacity are not considered persons who can be sued in either federal or state court for damages under §1983.  *Will v. Michigan Department of State Police*, 491 U.S. 58, 71 (1989).

The question of whether a sheriff and his or her department are state or local officials for Eleventh Amendment immunity purposes remained open in California until the Court of Appeal held that in setting policies concerning county jails, the sheriff acts as an immune state officer.  He is performing state law enforcement duties when operating the jail.  *County of Los Angeles v. Superior Court (Peters)*, 68 Cal.App.4th 1166 (1998).

The Ninth Circuit addressed the issue on several occasions in 2001, including *Streit v. County of Los Angeles*, 236 F.3d 552 (9th Cir. 2001).  In that case, the sheriff and his department argued that they functioned as state officials or state entities, rather than county officials or entities, when engaged in law enforcement functions and therefore claimed that they could not be successfully sued under §1983 for the alleged constitutional torts of the deputies.  The moving parties contended that they were an arm of state government and were not persons within the meaning of §1983.  The Ninth Circuit disagreed.

The United States Supreme Court has held that a state Supreme Court remains the ultimate arbiter of the law of that state.  The United States Supreme Court explained:

/ / /

15

1
2
3
4
5

> Neither this Court nor any other federal tribunal has any
> authority to place a construction on a state statute different
> from the one rendered by the highest court of the State. . . .
> This proposition, fundamental to our system of federalism,
> is applicable to procedural as well as substantive rules.

6   *Johnson v. Fankell*, 520 U.S. 911, 916 (1997).

7   The Ninth Circuit has explained that it is "bound by the decisions of the [state]

8   Court of Appeals absent convincing evidence that the [state] Supreme Court would

9   decide the matter differently." *Green v. City of Tucson*, 340 F.3d 891, 899, n.10 (9th

10  Cir. 2003). A state Supreme Court's construction of state law is binding upon federal

11  courts. *Jones v. Bates*, 127 F.3d 839, 856 (9th Cir. 1997) ["No federal court except

12  for the United States Supreme Court has appellate jurisdiction over final decisions of

13  the California Supreme Court."].

14  Subsequent to *Streit* and other Ninth Circuit decisions disagreeing with the

15  California Court of Appeal in *Peters*, the California Supreme Court published a

16  decision holding that the Ninth Circuit decisions misperceived California law on the

17  subject and that *Peters* was correctly decided. In *Venegas v. County of Los Angeles*,

18  32 Cal.4th 820 (2004), the California Supreme Court held that a sheriff acted as a

19  state agent when performing law enforcement duties. Therefore, he and his

20  department were absolutely immune from a §1983 damages action. In *Venegas*, a

21  couple brought a civil action against a county, its sheriff, and his department, alleging

22  §1983 causes of action.

23  A sheriff whose agency conducts a criminal investigation, held *Venegas*, acts

24  on behalf of the state government while performing such law enforcement activities.

25  The sheriff is acting as a state government agent and is therefore absolutely immune

26  from civil prosecution for asserted federal civil rights violations in §1983 actions.

27  California constitutional and statutory provisions demonstrate that the sheriff operates

28  under the auspices and supervision of the state attorney general. The latter represents

16

1  the state, not the county.  He exercises law enforcement oversight in his official

2  capacity.  His supervision over sheriffs brings them within the umbrella of state

3  government.  32 Cal.4th at 830, 833.

4       The state Supreme Court in *Venegas* pointed out that the California

5  Constitution, Article 5, Section 13, provides that, subject to the powers of the

6  Governor, it is the Attorney General who has direct supervision over every sheriff in

7  all matters pertaining to the duties of his or her office.  Government Code §12560

8  authorizes the Attorney General to directly supervise all sheriffs with power to order

9  activities regarding investigations as well as to order the preparation of reports.

10  Contrarily, county boards of supervisors have no control over a sheriff's discharge

11  of his or her law enforcement functions.  Gov. Code §25303.  The elected local

12  legislature does not tell the elected sheriff of a county how to enforce the law; to hold

13  contrarily would cross separation of powers lines.  The statute states that the board

14  of supervisors can only control the funding of the agency, not its investigative or

15  prosecutorial functions.

16       The state Supreme Court disagreed with the Ninth Circuit decisions holding

17  to the contrary.  32 Cal.4th at 836.  The *Venegas* court concluded that "the constitu-

18  tional and statutory provisions discussed above, demonstrat[e] that a sheriff

19  represents the state, not the county, when performing law enforcement duties in his

20  official capacity."  *Id*.  *Venegas* sided with *Peters* (sheriff and his department are

21  damages-immune state actors in the operation of a jail) over the earlier Ninth Circuit

22  cases rejecting *Peters*.  32 Cal.4th at 839.

23       The *Venegas* court stated that the Ninth Circuit's analysis expressed a policy

24  concern about overly broad immunity from suit.  But that concern is extraneous to the

25  *McMillian* court's factor-balancing test, a test which, as the Ninth Circuit

26  acknowledged, requires a weighing of the state's Constitution, statutes, and case law.

27  32 Cal.4th at 838.

28  / / /

17

1       A local governmental unit is liable only if the alleged deprivation of rights

2   implements or executes *its* policy, practice, or custom.  Because the actions and

3   policies at issue in this case are not official policies of the County of Ventura,

4   because the Ventura County Sheriff, Bob Brooks, acts in his capacity as a state

5   official rather than a local policymaker for the County, the County of Ventura is not

6   liable to suit under §1983.  *McMillian, supra,* 520 U.S. at 783.

7   **VIII.**

8   **THE STATE-LAW THEORIES FAIL FOR THREE REASONS**

9   **A.**  **There Is No Evidence of Fault upon Which a State-Law Cause of Action**

10       **Must Rest**

11       Absent any indication of misconduct, no theory is viable against municipal

12   officials or defendants.  Without any violation of a person's rights, there is no

13   conduct upon which to base any claim under the law.  *Thompson v. County of Los*

14   *Angeles*, 142 Cal.App.4th 154, 173 (2006); *City of Simi Valley v. Superior Court*,

15   111 Cal.App.4th 1077, 1085 (2003).

16       In the present case, there was no custodial or medical fault.  The plaintiff fully

17   concedes that the jailers could not have known of or impeded the sudden attack upon

18   him (p. 169:23-25).  He also testified that he received immediate medical attention,

19   next-day X-rays, results thereof two days later, and oral maxillofacial surgery two

20   days after that, which was his first demand for advanced medical treatment.  He ruled

21   out the four days between the attack and the surgery as causing harm beyond that

22   already suffered in the inmate-on-inmate attack (p. 179:14-25; p. 180:1-3).

23   **B.**  **Municipalities Are Immune from State-Law Causes of Action Arising**

24       **from Injuries to Jail Inmates**

25       California Government Code §844.6(a)(2) provides that a public entity is not

26   liable for an injury to any prisoner.  Therefore, the County of Ventura, the Ventura

27   County Sheriff's Department, and Sheriff Bob Brooks are not liable, as they are

28   immune from claims by a prisoner, such as the plaintiff, arising from jail injuries.

1    In the case of *Badiggo v. County of Ventura*, 207 Cal.App.3d 357 (1989), a
2  personal injury action was brought against a county by a plaintiff who was injured in
3  a work furlough facility.  The appellate court held that his action was barred by
4  statute, which immunizes public entities for injuries caused to any prisoner.  Plaintiff
5  was restrained at the facility and not permitted to leave except to go to work, thus
6  making the plaintiff a statutory prisoner.  *Id*. at 361.

7  **C.    There Is No Proximate Cause**

8    Defendants incorporate by reference their discussion contained at page 13,
9  lines 16-26.

10                                    **IX.**

11       **THE COURT HAS JURISDICTION TO RULE ON**
12       **THE STATE-LAW CAUSES OF ACTION IN THIS**
13       **PROCEEDING BECAUSE THEY ARISE FROM THE**
14       **SAME COMMON NUCLEUS OF OPERATIVE**
15       **FACTS**

16    A district court correctly asserts pendent jurisdiction, also known as
17  supplemental or ancillary jurisdiction, over non-federal theories which derive from a
18  common nucleus of operative facts. *Republic of the Philippines v. Marcos*, 862 F.2d
19  1355, 1359 (9th Cir. 1988).  A test to determine that issue is whether the claims are
20  such that a plaintiff would ordinarily be expected to try all of them in a single judicial
21  proceeding.  *Id*.  The *Marcos* court held, "The power of a federal court to decide
22  pendent claims is wide-ranging."  *Id*.  While the exercise of the power is discre-
23  tionary, ordinarily the power will be exercised if it exists.  *Id*.  Only exceptionally is
24  federal jurisdiction not employed where applicable.  *Id*.

25    In the present case, plaintiff has asserted seven pendent or supplemental state
26  claims under the fourth through tenth causes of action.  These are inextricably
27  intertwined with the facts of allegedly not protecting plaintiff from the inmate attack
28  and allegedly not providing sufficient or sufficiently prompt medical care to him.  All

19

of the causes of action are simply different names for trying to vindicate those two alleged primary rights.

But as the defendants have shown in this points and authorities and the statement of uncontroverted facts/separate statement of undisputed facts, there is no viable cause of action. While that can be derived from the universe of facts contained in the statement of undisputed facts, it is more summarily indicated in the plaintiff's answer to both questions in his deposition. On page 169, lines 23-25, and page 170, line 1, plaintiff answered "no" to the question of whether there was anything which the deputies could have done to have stopped the inmates' attack upon him. He also answered at page 179, lines 14-25, and page 180, lines 1-3, that the delay in treatment did not make his jaw any worse than the blow from the inmate who attacked him.

There is no liability under these state-law causes of action. Therefore, they too should be dismissed with prejudice.

## X.

## CONCLUSION

Defendants therefore respectfully request entry of summary judgment in their favor or, in the alternative, for summary adjudication of the issues identified in the notice.

Dated:  February ____, 2010          LAW OFFICES OF ALAN E. WISOTSKY

By: _____
JEFFREY HELD

Dated:  February ____, 2010          BERTLING & CLAUSEN

By: _____
STEVE H. SHLENS
Attorneys for Defendants
COUNTY OF VENTURA, VENTURA
COUNTY SHERIFF'S DEPARTMENT,
SHERIFF BOB BROOKS,
CALIFORNIA FORENSIC MEDICAL
GROUP, and JOHN KORZELIUS, M.D.

20