Alan E. Wisotsky (SBN 68051)
Jeffrey Held (SBN 106991)
LAW OFFICES OF ALAN E. WISOTSKY
300 Esplanade Drive, Suite 1500
Oxnard, California  93036
Tel:    (805) 278-0920
Fax:    (805) 278-0289
E-mail: lawyers@wisotskylaw.com

Peter G. Bertling # 131602 (pgb@bertling-clausen.com)
Steve H. Shlens #188851 (shs@bertling-clausen.com)
BERTLING & CLAUSEN L.L.P.
15 West Carrillo Street, Suite 100
Santa Barbara, California 93101
Tel:    (805) 892-2100
Fax:    (805) 963-6044

Attorneys for Defendants COUNTY OF VENTURA, VENTURA COUNTY SHERIFF'S DEPARTMENT, SHERIFF BOB BROOKS, CALIFORNIA FORENSIC MEDICAL GROUP [*incorrectly sued and served herein as California Forensic Group*], and JOHN KORZELIUS

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN W. BIRGES, an individual,<br><br>Plaintiff,<br><br>v.<br><br>COUNTY OF VENTURA, VENTURA COUNTY SHERIFF'S DEPARTMENT, VENTURA COUNTY SHERIFF BOB BROOKS, an individual, CALIFORNIA FORENSIC GROUP, JOHN KORZELIUS, and DOES 1-100,<br><br>Defendants. | No. CV 09-01249 SJO (SSx)<br><br>**AMENDED STATEMENT OF UNCONTROVERTED FACTS/ SEPARATE STATEMENT OF UNDISPUTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF DEFENDANTS' SUMMARY JUDGMENT/ SUMMARY ADJUDICATION MOTION**<br><br>[Filed concurrently with motion for summary judgment, declaration with supporting exhibits, and proposed judgment]<br><br>Date: March 29, 2010<br>Time: 10:00 a.m.<br>Ctrm: 1 – 2nd Floor, 312 N. Spring St. |

Defendants, COUNTY OF VENTURA, VENTURA COUNTY SHERIFF'S DEPARTMENT, VENTURA COUNTY SHERIFF BOB BROOKS, CALIFORNIA

FORENSIC MEDICAL GROUP, and JOHN KORZELIUS, submit this statement of uncontroverted facts/separate statement of undisputed facts and conclusions of law, in accordance with Central District Local Rule 56-1 and Judge Otero's standing order, point 19(c). The declaration of defense counsel Jeffrey Held with exhibits in support of the summary judgment motion is filed concurrently herewith.

## I.

## DEFENDANTS' STATEMENT OF UNCONTRO-VERTED FACTS/SEPARATE STATEMENT OF UN-DISPUTED FACTS

**A.   Facts Which Relate to Plaintiff's Claim That the Jailers Were Deliberately Indifferent to His Security and Protection (e.g., Second Amended Complaint, p. 7:1-3)**

| *Undisputed Facts* | *Supporting Evidence* |
|---|---|
| 1.   The plaintiff was a prisoner incarcerated in the Todd Road Jail facility of the Ventura County Sheriff's Department between February 3, 2008, and February 24, 2008, the day on which three inmates attacked the plaintiff. | Plaintiff's deposition, Exhibit A, p. 156:1-7 |
| 2.   No guard or jail official attacked the plaintiff. | Plaintiff's deposition, Exhibit A, p. 156:25; p. 157:1-2 |

| | | |
|---|---|---|
| 1 | 3. The plaintiff was housed with | Plaintiff's deposition, Exhibit A, |
| 2 | the inmates who attacked him for three | p. 154:20-25; p. 155:1-25 |
| 3 | weeks, four hours per day, before they | |
| 4 | attacked him. | |
| 5 | | |
| 6 | 4. There were no problems or | Plaintiff's deposition, Exhibit A, |
| 7 | altercations with any inmates at the Todd | p. 85:24-25; p. 86:1-3; p. 156:8- |
| 8 | Road Jail from plaintiff's arrival to the | 24 |
| 9 | attack forming the basis of this lawsuit. | |
| 10 | | |
| 11 | 5. The plaintiff never notified | Plaintiff's deposition, Exhibit A, |
| 12 | any custody deputy or jail official of any | p. 157:3-6 |
| 13 | fear or concern at any time before the three | |
| 14 | inmates attacked him. | |
| 15 | | |
| 16 | 6. No custody deputy or jail | Plaintiff's deposition, Exhibit A, |
| 17 | official was aware of any of the events | p. 157:10-14 |
| 18 | preceding the attack upon the plaintiff, | |
| 19 | such as his chess game comments or | |
| 20 | inmate Mejia's two demands that the | |
| 21 | plaintiff surrender part of his commissary. | |
| 22 | | |
| 23 | 7. The inmates' attack upon the | Plaintiff's deposition, Exhibit A, |
| 24 | plaintiff was sudden and unexpected. | p. 157:7-9 |
| 25 | | |
| 26 | 8. The plaintiff saw inmate | Plaintiff's deposition, Exhibit A, |
| 27 | Mejia make a poor chess play, leading to | p. 158:4-6 |
| 28 | inmate Greer checkmating inmate Mejia. | |

3

| | | |
|---|---|---|
| 1 | 9. Upon seeing inmate Mejia checkmated by inmate Greer, the plaintiff showed disrespect for inmate Mejia, saying, "You let this guy beat you?" while laughing at inmate Mejia. | Plaintiff's deposition, Exhibit A, p. 93:7-14; p. 94:1-2; p. 158:10-12; p. 159:3-4 |
| 7 | 10. Plaintiff probably did use the phrase "dumb ass" in his laughing remark to inmate Mejia about letting himself be checkmated by inmate Greer; the comment may actually have been "You let this dumb ass beat you?" | Plaintiff's deposition, Exhibit A, p. 166:5-19; p. 167:4-9 |
| 14 | 11. Although plaintiff only intended to develop camaraderie with inmate Mejia by using friendly jibes and insults, the losing chess player, inmate Mejia, took the comment and laughter from plaintiff much more seriously. | Plaintiff's deposition, Exhibit A, p. 95:17-19 |
| 21 | 12. The inmate who checkmated inmate Mejia, Greer, was not a particularly good chess player. | Plaintiff's deposition, Exhibit A, p. 94:2-4 |
| 25 | 13. Inmate Mejia's response to plaintiff's effort at bonding humor was to give the plaintiff a dirty look and continue glaring at plaintiff. | Plaintiff's deposition, Exhibit A, p. 159:20; p. 160:2-3 |

4

| | | |
|---|---|---|
| 1 | 14.   After laughing at inmate | Plaintiff's deposition, Exhibit A, |
| 2 | Mejia for losing at chess to a poor player, | p. 94:3-4, 19-22; p. 160:4-12; |
| 3 | Greer, it suddenly dawned on plaintiff that | p. 161:6-10 |
| 4 | people do not like to lose at an intellectual | |
| 5 | game like chess, because it is a long, | |
| 6 | intense mental challenge.  So plaintiff | |
| 7 | apologized to inmate Mejia and told him | |
| 8 | that he had not intended to disrespect him. | |
| 9 | | |
| 10 | 15.   As it dawned on plaintiff that | Plaintiff's deposition, Exhibit A, |
| 11 | he may have insulted inmate Mejia, he also | p. 161:17-20 |
| 12 | realized that an Hispanic inmate would | |
| 13 | likely be inculturated to react adversely to | |
| 14 | denigrating insults to his male prowess. | |
| 15 | | |
| 16 | 16.   Plaintiff also realized after | Plaintiff's deposition, Exhibit A, |
| 17 | making the comment about inmate Mejia | p. 161:21-23 |
| 18 | losing at chess and laughing that it had | |
| 19 | been unwise of him to degrade a member | |
| 20 | of a significant jail inmate power block. | |

| | | |
|---|---|---|
| 1 | 17.  Plaintiff knew the three facets of inmate Mejia's hypersensitivity to insults when he laughed at him while remarking that he let himself be defeated in chess by a poor player [the three facets being loss of a mental challenge, ethnic inculturation, and need to maintain power block status]. | Plaintiff's deposition, Exhibit A, p. 162:3-6 |
| | 18.  After laughing at inmate Mejia while commenting on his chess loss to inmate Greer, the plaintiff realized that inmate Mejia was angry with him and primed to react. | Plaintiff's deposition, Exhibit A, p. 95:8-16 |
| | 19.  A couple of minutes after plaintiff's remark about inmate Mejia losing at chess and laughing, inmate Mejia approached plaintiff with an initial demand for disrespect reparations, stating, "You need to start kicking me down canteen every week." | Plaintiff's deposition, Exhibit A, p. 161:2-6, 11-14; p. 163:18-21 |

6

| | | |
|---|---|---|
| 1 | 20.   The plaintiff rejected both the initial and subsequent demands by inmate Mejia for disrespect reparations in connection with the comment about losing at chess and laughing; the plaintiff told inmate Mejia to "fuck off and go to hell." | Plaintiff's deposition, Exhibit A, p. 86:4-13; p. 88:7-16; p. 161:2-6, 11-14; p. 163:18-21; p. 164:4-24 |
| 8 | 21.   Within moments of profanely rejecting inmate Mejia's second demand for disrespect reparations, the plaintiff was hit from behind by a flurry of blows from fists, one of which struck him hard in the jaw. | Plaintiff's deposition, Exhibit A, p. 86:21-25; p. 88:20-25; p. 89:1-7; p. 164:25; p. 165:1-5 |
| 15 | 22.   The attack of the inmates upon the plaintiff lasted only briefly, perhaps 10 or 15 seconds. | Plaintiff's deposition, Exhibit A, p. 99:18-25; p. 165:6-8 |
| 19 | 23.   As soon as plaintiff's jaw was struck in the attack by the other inmates, a custody deputy came on the public address system, ordering lockdown. | Plaintiff's deposition, Exhibit A, p. 87:18-25 |
| 24 | 24.   The plaintiff testified that there was nothing which the guards or custody deputies could have done to have preempted the attack of the inmates upon him. | Plaintiff's deposition, Exhibit A, p. 169:23-25; p. 170:1 |

7

**B. Facts Relating to Plaintiff's Claim That He Received Insufficient Medical Care Following the Attack of the Other Inmates Upon Him (e.g., Second Amended Complaint, p. 4:22-24)**

| | |
|---|---|
| 25. On the day of the attack upon him, the Todd Road Jail nurse examined the plaintiff. | Plaintiff's deposition, Exhibit A, p. 174:14-16 |
| 26. The Todd Road Jail nurse actually examined the plaintiff immediately after the attack of the other inmates upon him. | Plaintiff's deposition, Exhibit A, p. 180:23-25 |
| 27. The Todd Road Jail nurse palpated plaintiff's jaw and said, "I don't think it's broken. I think it's just swollen." | Plaintiff's deposition, Exhibit A, p. 174:17-20 |
| 28. The Todd Road Jail nurse involved a doctor at the facility who ordered a series of mandibular (jaw) X-rays of the plaintiff, which were in fact taken the first thing on the morning after the attack of the other inmates upon the plaintiff. | Plaintiff's deposition, Exhibit A, p. 181:5-14 |

| | | |
|---|---|---|
| 1 | 29. Two days after the attack upon him by the other inmates, the plaintiff was told that the X-rays revealed that his jaw actually was fractured. | Plaintiff's deposition, Exhibit A, p. 181:15-17 |
| 7 | 30. On February 28, 2008, two days after the X-ray results of plaintiff's jaw were available, Dr. Lopez, an oral maxillofacial surgeon under contract with the Ventura County Jail, repaired plaintiff's jaw by installing a series of guide wires. | Plaintiff's deposition, Exhibit A, p. 113:11-25; p. 171:14-25; p. 198:7-8 |
| 16 | 31. The plaintiff was given continuous analgesics to combat the jaw pain. | Plaintiff's deposition, Exhibit A, p. 115:10-16, 23-25; p. 116:1-4, 11-17; p. 175:10-15; p. 198:9-12; p. 208:15-25; p. 209:1 |
| 21 | 32. The first time that the plaintiff requested that the jail personnel provide medical care for injuries which he sustained in the attack by the other inmates was two days after that attack, on February 26, 2008. | Plaintiff's deposition, Exhibit A, p. 173:1-18; p. 174:25; p. 175:1-2 |

|   |   |
|---|---|
| 33. A few days after Dr. Lopez installed the guide wires in plaintiff's jaw, they loosened, resulting in some cuts in his mouth and gums. | Plaintiff's deposition, Exhibit A, p. 172:1-7, 19-23 |
| 34. The nurse packed gauze in the plaintiff's mouth thereafter, which did succeed in keeping the wires temporarily taut and his mouth partially open to prevent the wires from cutting the gums. | Plaintiff's deposition, Exhibit A, p. 123:2-25; p. 124:1 |
| 35. Dr. Lopez repaired the failed guide wires in plaintiff's jaw a few days after they became loosened, replacing them with rubber bands. | Plaintiff's deposition, Exhibit A, p. 46:18-24 |
| 36. The plaintiff testified that the time between the attack and the oral maxillofacial surgery four days later did not worsen his medical condition beyond the damage to his jaw caused by the attack of the inmates. | Plaintiff's deposition, Exhibit A, p. 179:14-25; p. 180:1 |

/ / /
/ / /
/ / /

## II.

## **CONCLUSIONS OF LAW**

1. There was no constitutional violation, and therefore no §1983 liability, on the part of any of the defendants, based upon plaintiff's theory of failure to protect him from the attack by the other inmates.

2. There was no constitutional violation, and therefore no §1983 liability, on the part of any of the defendants, based upon plaintiff's theory of failure to supply him medical care.

3. There is no federal civil rights liability on the part of the Ventura County Sheriff's Department or Sheriff Bob Brooks because they are a state agency and state official entitled to the absolute damages immunity of the Eleventh Amendment.

4. There is no federal civil rights liability on the part of the County of Ventura because it had no right to control the conduct of a state agency, the Ventura County Sheriff's Department, and a state official Sheriff Bob Brooks.

5. No proximate causation dooms all three federal and all seven state counts.

6. The state-law counts, 4 through 10, are not viable against the Ventura County Sheriff's Department, Sheriff Bob Brooks, or the County of Ventura because California Government Code §844.6(a)(2) provides that a public entity is not liable for an injury to any prisoner.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

7. None of the defendants are liable to the plaintiff under any of the state-law causes of action, 4 through 10, for the reason that there was no misconduct of any nature by any defendant toward the plaintiff.

Dated: February ____, 2010        LAW OFFICES OF ALAN E. WISOTSKY

By: _____
    JEFFREY HELD

Dated: February ____, 2010        BERTLING & CLAUSEN

By: _____
    STEVE H. SHLENS
    Attorneys for Defendants
    COUNTY OF VENTURA, VENTURA
    COUNTY SHERIFF'S DEPARTMENT,
    SHERIFF BOB BROOKS,
    CALIFORNIA FORENSIC MEDICAL
    GROUP, and JOHN KORZELIUS, M.D.

**STATEMENT OF REVIEW**

This statement of uncontroverted facts/separate statement of undisputed facts and conclusions of law has been reviewed and considered by the federal district judge, Hon. S. James Otero.

Dated: _____          _____
                                S. JAMES OTERO
                                United States District Judge